AMENDED ORDER

The Florida Board of Bar Examiners (Board) has filed a “Report and Recommendation” regarding the application of D.M.B. for admission to The Florida Bar. See art. V, § 15, Fla. Const. The Board recommended that D.M.B. be conditionally admitted to the Bar subject to “probation for an indefinite period of time,” which would require his compliance with the terms and conditions set forth in the Board’s report and D.M.B.’s consent agreement. See Fla. Bar Admiss. R. 3-22.5(b) and 5-15. The Court disapproves the Board’s recommendation and hereby permanently denies D.M.B. admission to The Florida Bar. See Fla. Bar Admiss. R. B — 23.6(d); Fla. Bd. Bar Examiners re: Castro, 87 So.3d 699 (Fla.2012); Fla. Bd. Bar Examiners Re: W.F.H., 933 So.2d 482 (Fla.2006).
D.M.B. (“Applicant”) has an extensive and documented history of sexual exploitation and misconduct. In 1984, Applicant received an M.D. degree and, in 1985, was licensed to practice medicine in Ohio. Shortly thereafter, he was investigated for inappropriate sexual conduct while he was a resident at a university hospital. Applicant had allowed a female patient in the hospital to perform oral sex on him.
Next, according to the sworn statement Applicant provided to the Ohio medical board, in 1992 he began treatment of a female patient. Applicant engaged in sexual conduct with this patient “on three to five occasions” by allowing her to perform oral sex on him. This conduct would occur at the conclusion of regularly scheduled patient visits.
In 1993, Applicant committed the same misconduct when treating another female patient. He engaged in inappropriate sexual conduct with this patient “on three to five occasions” in an examination room in his medical office or in a room at the hospital.
In 2001, Applicant began treating another female patient in the hospital. Later *533 that month he treated the patient in his medical office. Applicant engaged in sexual intercourse with the patient in his office.
In addition to these incidents, the Board of Bar Examiners found that Applicant had extramarital affairs with approximately nineteen other female patients while he was their doctor.
Further, in October 2001, a patient filed a criminal complaint against Applicant alleging sexual assault and rape. Criminal charges were not pursued due to insufficient evidence.
In April 2002, Applicant’s medical privileges at a hospital were suspended pending the investigation of allegations of sexual misconduct with a patient.
In July 2002, Applicant terminated his medical privileges at another hospital when he was asked to provide certain information during an investigation regarding allegations of sexual misconduct.
In August 2008, following an investigation into claims of sexual misconduct with his patients, the State Medical Board of Ohio permanently revoked Applicant’s certificate to practice medicine in that state. The Ohio medical board found that his improper sexual conduct with patients constituted a failure to conform to the minimal standards of care. Significantly, the State Medical Board of Ohio also found that Applicant violated several provisions of the Code of Ethics of the American Medical Association.
Between 2003 and 2004, Applicant submitted applications to the medical licensing boards for the states of West Virginia, Georgia, Arizona, and Florida. His application was denied by the licensing board in Florida, in part, for his misconduct in Ohio of “exercising influence within a patient-physician relationship for purposes of engaging a patient in sexual activity.” Applicant withdrew his applications in the three remaining states because he had been notified it was likely the applications would be denied.
The Florida Board of Bar Examiners found that Applicant has repeatedly provided explanations that were false, misleading, untruthful, and lacking in candor. He was untruthful when he was investigated by the hospital. Applicant provided sworn statements to the State Medical Board of Ohio that were false, misleading, or lacking in candor. When he applied to the West Virginia Board of Medicine to be licensed as a doctor, he provided a false or misleading explanation of the Ohio events. In his 2008 Florida Bar Application, his description of the misconduct during his residency stated that he and the patient were kissing. Applicant’s explanation was false, misleading, or lacking in candor because he failed to disclose that the patient performed oral sex on him.
Before the Florida Board of Bar Examiners, Applicant submitted evidence showing that since 2003 he has undergone treatment directed at a sexual- disorder. He participated in a two-month intensive outpatient program, began and continued participation in a twelve-step program for recovering sexual addicts and, in 2008, began therapy. The Board recommended that Applicant undergo a psychosexual evaluation. The doctor who evaluated Applicant in 2009 determined that he does not have a major mental disorder or syndrome. The doctor recommended conditional admission with Applicant’s continued participation in a twelve-step program and continued treatment with his current treatment provider. Thereafter, the Board submitted a report to the Court recommending that Applicant be conditionally admitted to The Florida Bar subject to certain terms and conditions. The Court issued an order in June 2010 disapproving the Board’s recommendation.
*534 A year later, in July 2011, Applicant appeared before a division of the Board for an additional hearing. After the hearing, the Board determined that the pending Specifications were proven and individually or collectively disqualifying, and that Applicant had not proven rehabilitation from his past misconduct. The Board concluded that his admission should be withheld for one year to provide him an opportunity to demonstrate his rehabilitation by complying with certain conditions, including continued involvement in the twelve-step program, treatment with a doctor, and community service of at least 500 hours.
In June 2012, Applicant submitted a sworn report to the Board describing his evidence of rehabilitation and compliance with the specified conditions. The report included character letters, character affidavits, evidence of the nature and extent of his community service, and other documentary evidence. Applicant has completed 521 hours of community service. In 2003, he began participating in a twelve-step program for recovering sexual addicts and has remained active in the program for the past nine years. A doctor testified before the Board that Applicant’s “sexual misconduct and addiction [are] in full remission” and that no evidence of mental illness remained. The doctor stated, however, that Applicant could be admitted to the Bar subject to “continuing his current program of treatment” and other constant conditions. The Board has filed a report recommending that Applicant be conditionally admitted to The Florida Bar, subject to probation for an “indefinite period” with several continuing terms and conditions.
The Court is not precluded from reviewing the factual underpinnings of the Board’s recommendation, based on an independent review of the record. Fla. Bd. Bar Examiners re M.B.S., 955 So.2d 504, 508 (Fla.2007). Based upon its review, the Court disapproves the Board’s recommendation and permanently denies D.M.B. admission to The Florida Bar. The facts in this case and the Court’s case law speak directly to Applicant’s character and fitness deficiencies. The Court has repeatedly stated that “[e]ven the slightest hint of sexual coercion or intimidation directed at a client must be avoided at all costs.” Fla. Bar v. Scott, 810 So.2d 893, 900 (Fla.2002) (quoting Fla. Bar v. Sam-aha, 557 So.2d 1349,1350 (Fla.1990); Scott was disbarred for sexual misconduct with a client). Applicant has not committed a “slight hint” of professional misconduct; rather, for over a decade, he improperly used his influence as a treating physician to engage in sexual activities with approximately twenty-five of his patients.
The State Medical Board of Ohio found that Applicant’s misconduct with his patients constituted a failure to “conform to the minimal standards of care.” Applicant used his professional license to exploit vulnerable people — his own patients — who trusted him to provide them with proper care. This behavior is not tolerable. In Florida Bar v. McHenry, 605 So.2d 459, 460-61 (Fla.1992), the Court disbarred an attorney who engaged in improper touching and sexual acts towards two clients. The Court found that his behavior demonstrated “severe moral turpitude, and his character and conduct are wholly inconsistent with approved professional standards.” Id.; see also Fla. Bar v. Sentón, 882 So.2d 997, 1000 (Fla.2004) (the respondent was disbarred for exploiting the lawyer-client relationship by coercing his client into engaging in sexual conduct on two occasions). Further, in Scott, the Court specifically approved the referee’s finding that Scott’s sexual misconduct demonstrated “a callous disregard for his client’s best interests, and the vilest exploitation of her vulnerability.” Scott, 810 *535 So.2d at 897. Applicant has an extensive and documented history of preying upon his vulnerable female patients. The Court cannot permit a person with this history to become a member of The Florida Bar, where he could misuse his license to practice law just as he misused his license to practice medicine — by gaining peoples’ trust and then exploiting them for his own sexual gratification.
Applicant cannot be trusted with clients. This point was made abundantly clear when the medical licensing board for the State of Florida denied his application due to his past misconduct of “exercising influence within a patient-physician relationship for purposes of engaging a patient in sexual activity.” When Applicant received notice that the other three state medical licensing boards were going to deny his applications, he withdrew those applications. That fact that four separate medical licensing boards denied or notified Applicant that they were going to deny his applications demonstrates that Applicant’s past misconduct is so egregious that these professional organizations will not grant him licenses or allow him to have patients. Further, the State Medical Board of Ohio permanently revoked his certificate to practice medicine in Ohio. The reasoning of these medical licensing boards is applicable to Applicant’s request to become a member of The Florida Bar. Applicant had sexual relations with approximately twenty-five of his patients who were relying on him for professional care. Also, over the course of a decade, Applicant repeatedly violated the Code of Ethics of the American Medical Association. His egregious conduct does not demonstrate that he would respectfully obey the professional ethics of the legal profession.
In addition, Applicant has repeatedly provided statements that were false, misleading, and lacking in candor. As the Florida Board of Bar Examiners found, Applicant was untruthful when he was investigated by the hospital. Further, in 2002, he provided sworn statements to the State Medical Board of Ohio that were false, misleading, or lacking in candor. In 2003, when he applied to the West Virginia Board of Medicine, he provided a false or misleading explanation of the Ohio events. Even in his 2008 Florida Bar Application, his description of his misconduct during his residency was false, misleading, or lacking in candor because he only stated that he and the patient had been kissing. “Truthfulness and candor are the most important qualifications for Bar membership.” Fla. Bd. Bar Examiners re M.B.S., 955 So.2d 504, 509 (Fla.2007); see also Fla. Bd. Bar Examiners ex reí. R.L.W., 793 So.2d 918, 926 (Fla.2001) (“no qualification for membership in The Florida Bar is more important than truthfulness and candor”).
Accordingly, the totality of the circumstances, which includes the underlying facts of the instant case, is so egregious and impacts so adversely on the character and fitness of D.M.B. that the misconduct mandates that D.M.B. not be admitted to The Florida Bar now or at any time in the future.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.